1  RON BENDER (SBN 143364)
   TODD M. ARNOLD (SBN 221868)
2  KRIKOR J. MESHEFEJIAN (SBN 255030)
   LEVENE, NEALE, BENDER, RANKIN & BRILL L.L.P.
3  10250 Constellation Boulevard, Suite 1700
   Los Angeles, California 90067
4  Telephone:  (310) 229-1234
   Facsimile:  (310) 229-1244
5  Email:  rb@lnbrb.com, tma@lnbrb.com; kjm@lnbrb.com

6
   Counsel for Chapter 11 Debtor and Debtor in Possession
7

8              UNITED STATES BANKRUPTCY COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                  LOS ANGELES DIVISION

11

12  In re:                        ) Case No. 2:09-bk-29228-ER
                                  )
13  CASTELLINO VILLAS, A K.F LLC, ) Chapter 11
    a California limited liability )
14  company,                      )
                                  )
15                                ) DEBTOR'S PLAN OF REORGANIZATION
                                  ) (DATED NOVEMBER 10, 2009)
16              Debtor.           )
                                  )
17                                ) Plan Confirmation Hearing:
                                  ) Date:  [To Be Scheduled]
18                                ) Time:  [To Be Scheduled]
                                  ) Place: Courtroom 1568
19                                )        255 East Temple Street
                                  )        Los Angeles, CA 90012
20                                )
                                  )
21                                )
                                  )
22                                )
                                  )
23                                )
                                  )
24  _____)

25

                          1

**TABLE OF CONTENTS**

I.    INTRODUCTION...........................................2

II.   CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS......3

    A.   WHAT CREDITORS AND INTEREST HOLDERS WILL RECEIVE
       UNDER THIS PLAN ...................................3

    B.   UNCLASSIFIED CLAIMS................................3

       1. Administrative Expenses.........................3

       2. Priority Tax Claims.............................6

    C.   CLASSIFIED CLAIMS AND INTERESTS...................7

       1. Classes of Secured Claims.......................7

       2. Classes of Priority Unsecured Claims............28

       3. Class of General Unsecured Claims...............28

       4. Class of Interest Holders.......................31

    D.   MEANS OF EFFECTUATING THIS PLAN AND
       IMPLEMENTATION OF THIS PLAN ......................32

       1.  Funding for this Plan ........................32

       2.  Composition of the Reorganized Debtor ........33

       3.  Post-Confirmation Management .................33

       4.  Disbursing Agent .............................34

       5.  Objections to Claims .........................34

       6.  Avoidance Actions ............................35

       7.  Exemption from Transfer Taxes ................36

       8. Employment of Professionals by the Reorganized
       Debtor and Payment of Professional Fees and
       Expenses Incurred After the Effective Date ......36

9. Distributions to be Made Pursuant to
This Plan ................................... 36

10. Exculpations and Releases ..................... 37

11. Injunctions ................................... 37

22. Executory Contracts and Unexpired Leases ....... 38

23. Changes in Rates Subject to Regulatory
Commission Approval .......................... 40

24. Retention of Jurisdiction ..................... 40

III. EFFECT OF CONFIRMATION OF THIS PLAN ..................... 43

A.    DISCHARGE. ....................................... 43

B.    MODIFICATION OF THIS PLAN. ....................... 43

C.    POST-CONFIRMATION STATUS REPORTS. ................. 43

D.    POST-CONFIRMATION CONVERSION/DISMISSAL. ........... 44

E.    FINAL DECREE. .................................... 44

## I. **INTRODUCTION**

Castellino Villas, a K.F. LLC (the "Debtor"), the Debtor and Debtor in Possession in the above-referenced Chapter 11 bankruptcy case, is the Debtor in a pending Chapter 11 bankruptcy case. On July 24, 2009 (the "Petition Date"), the Debtor commenced this bankruptcy case by filing a Voluntary Petition under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101 et seq. ("Bankruptcy Code"). This document is the Debtor's Plan of Reorganization ("Plan") that is being proposed by the Debtor.

Chapter 11 allows the Debtor, and, under some circumstances, creditors and other parties in interest, to propose a plan of reorganization. This Plan is a plan of reorganization which has been proposed by the Debtor. The effective date of this Plan (the "Effective Date") will be the first business day which is at least eleven days following the date of entry of the Court order confirming this Plan (the "Plan Confirmation Order") when and provided that all of the following conditions to the effectiveness of this Plan have been satisfied or waived by the Debtor: (a) there shall not be any stay in effect with respect to the Plan Confirmation Order; (b) the Plan Confirmation Order shall not be subject to any appeal or rehearing; and (c) this Plan and all documents, instruments and agreements to be executed in connection with this Plan shall

have been executed and delivered by all parties to such documents, instruments and agreements. The Debtor following the Effective Date shall be referred to as the "Reorganized Debtor". Any defined terms which are not defined in this Plan shall have the same definitions as such terms have in the Debtor's Disclosure Statement which describes this Plan.

## II. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

**A.   What Creditors and Interest Holders Will Receive Under this Plan**

As required by the Bankruptcy Code, this Plan classifies claims and interests in various classes according to their right to priority. This Plan states whether each class of claims or interests is impaired or unimpaired. This Plan provides the treatment each class will receive.

**B.   Unclassified Claims**

Certain types of claims are not placed into voting classes; instead they are unclassified. They are not considered impaired and they do not vote on this Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code. As such, the Debtor has <u>not</u> placed the following claims in a class.

**1. Administrative Expenses**

3

Administrative expenses are claims for costs or expenses of administering the Debtor's Chapter 11 case which are allowed under Bankruptcy Code Section 507(a)(2). The Bankruptcy Code requires that all administrative claims be paid on the Effective Date unless a particular claimant agrees to a different treatment.

The following chart lists <u>all</u> of the Debtor's § 507(a)(2) administrative claims and their treatment under this Plan.

| Name | Amount Owed | Treatment |
|------|-------------|-----------|
| Clerk's Office Fees | $0 | Paid in full on the Effective Date out of the New Value Contribution |
| Office of the United States Trustee ("OUST") Fees | $0 | Paid in full on the Effective Date out of the New Value Contribution |
| Levene, Neale, Bender, Rankin & Brill L.L.P. ("LNBRB"), bankruptcy counsel to the Debtor | $100,000 (est.), which would be in addition to LNBRB's pre-petition retainer balance existing on the Petition Date | Paid in full out of the New Value Contribution on the later of the Effective Date and the date the Court enters an order allowing such fees and expenses |
|  |  |  |
|  |  |  |
| **TOTAL** | $100,000 |  |

Court Approval of Fees Required:

4

The Court must approve all professional fees and expenses listed in this chart before they may be paid. For all professional fees and expenses except fees owing to the Clerk of the Bankruptcy Court and fees owing to the OUST, the professional in question must file and serve a properly noticed fee application and the Court must rule on the application. Only the amount of fees and expenses allowed by the Court will be required to be paid under this Plan. The administrative claim amounts set forth above simply represent the Debtor's best estimates as to the amount of allowed administrative claims in this case. The actual administrative claims may be higher or lower. Whether the estimated administrative claims described above for LNBRB are ultimately the actual administrative claims for LNBRB will be dependent upon whether the Debtor is required to engage in any substantial litigation regarding the confirmation of this Plan and/or objecting to claims. To the extent the Debtor is required to engage in any such substantial litigation, LNBRB is likely to incur professional fees and expenses in excess (and possibly substantially in excess) of the figures set forth above. By voting to accept this Plan, creditors are not acknowledging the validity of, or consenting to the amount of, any of these administrative claims, and creditors are not waiving any of their rights to object to the allowance of any of these administrative claims. Similarly,

professionals who have been employed in this case are not being deemed to have agreed that the figures contained herein represent any ceiling on the amount of fees and expenses that they have incurred or are entitled to seek to be paid pursuant to Court order as such fees and expenses are just estimates provided at the time of the preparation of this Plan.

To the extent allowed administrative claims are allowed prior to the Effective Date, such allowed administrative claims may be paid by the Debtor out of the Debtor's funds. To the extent allowed administrative claims are allowed after the Effective Date, such allowed administrative claims will be paid by the Reorganized Debtor out of its operating funds or out of the New Value Contribution.

## 2. Priority Tax Claims

Priority tax claims include certain unsecured income, employment and other taxes described by Section 507(a)(8) of the Bankruptcy Code. Section 1129(a)(9)(C) of the Bankruptcy Code requires that each holder of such a Section 507(a)(8) priority tax claim receive regular installment payments of a total value, as of the Effective Date, equal to the allowed amount of such allowed tax claims, over a period ending not later than five years after the Petition Date. The claims chart attached as Exhibit "1" to the Disclosure Statement includes all priority tax claims which were either scheduled by the Debtor or asserted

6

by the taxing agencies in filed proofs of claim.    The Debtor is not aware of any priority tax claims.

## C.    Classified Claims and Interests

### 1. Classes of Secured Claims

Secured claims are claims secured by liens on property of the Debtor's estate.    The following charts set forth the description and treatment of each of the Debtor's secured claims.

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---------|-------------|----------------|-----------|
| 1 | All claims of Bank of the West (the "Bank")<br><br>Estimated claim amount is approximately $13,021,000 (excluding default interest and accrued and unpaid fees incurred by the Bank) | Impaired; allowed claim in this class is entitled to vote on this Plan. | In full settlement and satisfaction of all of the Bank's allowed claims against the Debtor, on the Effective Date, the Bank will receive the following: (i) a cash payment from the Debtor in the amount of $2.5 million paid out of the New Value Contribution, and (ii) two promissory notes executed by the Reorganized Debtor in favor of the Bank to replace or modify (whichever the Bank would prefer) the current promissory note from the Debtor in favor of the Bank dated on or about May 11, 2006 (the "Current Bank Note") but upon the same terms and |

conditions as contained in the Current Bank Note except to the extent expressly modified herein.

New Promissory Note One:

1. One of the new promissory notes ("New Promissory Note One") will have an initial principal balance of $8.5 million.

2. New Promissory Note One will accrue interest following the Effective Date at a per annum interest rate which is 2.40% in excess of the 30-day LIBOR Rate (as defined in the Current Bank Note) with a floor of 4% per annum.

3. By the tenth $(10^{th})$ day of each of the first sixty calendar months following the Effective Date (with the first such month to include the calendar month of the Effective Date if the Effective Date occurs before the 10th day of the month, and the first such month to include the calendar month after the month of the Effective Date if the Effective Date occurs after the 10th day of the month), the Reorganized Debtor will make an interest-only monthly payment to the

Bank on account of New Promissory Note One. Unless and until the per annum interest rate under New Promissory Note One exceeds the 4% floor, the monthly payment to be made by the Reorganized Debtor to the Bank on account of New Promissory Note One will be in the amount of $28,333.

4. All outstanding principal and interest under New Promissory Note One will be fully due and owing to the Bank on the date which is five years after the Effective Date (the "Maturity Date").

5. The obligations of the Reorganized Debtor to the Bank under New Promissory Note One (as well under New Promissory Note Two (described below) will be secured by the same collateral which secured the Debtor's obligations to the Bank under the Current Bank Note on the Petition Date and thereafter as set forth in the Stipulation for Interim Use of Cash Collateral and Adequate Protection filed on or about September 15, 2009 (the "Stipulation"), with such collateral to have the same lien priority which existed on the Petition Date and

9

thereafter as set forth in the Stipulation.

6. The obligations of the Reorganized Debtor to the Bank under New Promissory Note One will be personally guaranteed by Robert C. Kopple ("Kopple") upon the same terms and conditions and to the same extent that Kopple guaranteed the Current Bank Note. Once the obligations of the Reorganized Debtor to the Bank under the New Promissory Note One have been fully satisfied, Kopple shall be deemed fully and completely released from any personal guaranty obligations to the Bank on account of New Promissory Note One.

7. The Reorganized Debtor shall have the right, but not the obligation, to prepay any portion of the outstanding balance owing under New Promissory Note One at any time with no prepayment penalty (with the amount of the remaining monthly payments to be made under New Promissory Note One to be reduced accordingly).

New Promissory Note Two:

1. The other new

promissory note ("New Promissory Note Two") will have an initial principal balance computed as $13,021,000 less $8,500,000 less $2,500,000 plus the Bank's actual third-party expenses incurred and paid by the Bank after the Petition Date related to the Debtor not to exceed $50,000 (with the initial principal balance estimated at $2,071,000).

2. New Promissory Note Two will accrue interest following the Effective Date at the fixed rate of 4% per annum and will fully amortize over a period of sixty months following the Effective Date (amounting to estimated monthly payments of approximately $38,140.62).

3. By the tenth (10th) day of each of the first sixty calendar months following the Effective Date (with the first such month to include the calendar month of the Effective Date if the Effective Date occurs before the 10th day of the month, and the first such month to include the calendar month after the month of the Effective Date if the

11

Effective Date occurs after the 10th day of the month), the Reorganized Debtor will make a monthly payment to the Bank on account of New Promissory Note Two in an amount which will enable the Reorganized Debtor to pay New Promissory Note Two in full over a period of sixty months following the Effective Date with sixty equal payments (with each such monthly payment to be in the estimated amount of $38,140.62).

4.    Any and all outstanding principal and interest under New Promissory Note Two will be fully due and owing to the Bank on the Maturity Date.

5.    The obligations of the Reorganized Debtor to the Bank under New Promissory Note Two (as well under New Promissory Note One (described above) will be secured by the same collateral which secured the Debtor's obligations to the Bank under the Current Bank Note on the Petition Date and thereafter as set forth in the Stipulation, with such collateral to have the same lien priority which existed on the Petition Date and thereafter as set forth

in the Stipulation.

6. The obligations of the Reorganized Debtor to the Bank under New Promissory Note Two will be personally guaranteed by Kopple upon the same terms and conditions and to the same extent that Kopple guaranteed the Current Bank Note. Once the obligations of the Reorganized Debtor to the Bank under the New Promissory Note Two have been fully satisfied, Kopple shall be deemed fully and completely released from any personal guaranty obligations to the Bank on account of New Promissory Note Two.

7. The Reorganized Debtor may prepay amounts outstanding under New Promissory Note Two in whole or in part provided the Reorganized Debtor has given the Bank not less than five Business Days prior written notice of the Reorganized Debtor's intention to make such prepayment and pays to the Bank the prepayment premium due as a result. The prepayment premium shall also be paid, if the Bank, for any other reason, including acceleration or foreclosure, receives

all or any portion of principal prior to its scheduled payment date. The prepayment premium shall be equal to the present value of the product of: (i) the difference (but not less than zero) between (a) the interest rate applicable to the principal amount which is being prepaid, and (b) the return which the Bank could obtain if it used the amount of such prepayment of principal to purchase at bid price regularly quoted securities issues by the United States having a maturity date most closely coinciding with the Maturity Date and such securities were held by the Bank until the relevant Maturity Date ("Yield Rate"); (ii) a fraction, the numerator of which is the number of days in the period between the date of prepayment and the Maturity Date and the denominator of which is 360; and (iii) the amount of the principal so prepaid. Present value under New Promissory Note Two is determined by discounting the above product to present value using the Yield Rate as the discount factor.

14

General Terms:

Other than as described above, on the Effective Date, all accrued default interest, attorneys' fees and costs and other fees and costs under the Current Bank Note will be deemed waived.

The Reorganized Debtor will execute any reasonable documents requested and prepared by the Bank to memorialize the terms of this Plan and incorporate the terms and conditions of all prior loan documentation for the Current Bank Note except to the extent that any such terms or conditions is inconsistent with any specific provision of this Plan.

The Reorganized Debtor will obtain and/or maintain appropriate public liability insurance.

The Reorganized Debtor will obtain and/or maintain casualty insurance against all risks covered by a standard fire insurance policy, with an endorsement for extended coverage and

naming the Bank as a "loss payee," in the full amount of the Property's insurable value or in the amount of the Bank's then outstanding claim, whichever is greater.

Within one hundred twenty (120) days after the end of each calendar quarter, the Reorganized Debtor shall provide the Bank with a quarterly and year-to-date operating statement with all income and expenses of the Property and a current rent roll.

Upon reasonable notice and during normal business hours, the Bank shall have the right to inspect any and/or all of the Reorganized Debtor's books and records once during any thirty (30) day period.

The Reorganized Debtor shall not directly or indirectly sell, assign, lease, convey, transfer or otherwise dispose of the Property or enter into any agreement to do any of the foregoing (except dispositions of property in the ordinary course of business) without the Bank's prior written

consent.

Except as otherwise
specified in the Plan,
the Reorganized Debtor
shall not incur,
create, issue, assume
or suffer to exist any
new indebtedness other
than usual trade debt
incurred in the
ordinary course of its
business without the
prior written consent
of the Bank.

Other than liens
existing against the
Property on the
Petition Date, the
Reorganized Debtor will
not create, incur,
assume or suffer to
exist any lien, or
enter into, or make any
commitment to enter
into, any arrangement
for the acquisition of
any real property
through conditional
sale, lease-purchase or
other title retention
agreements, with
respect to any real
property (except in the
ordinary course of
business) without the
Bank's prior written
consent.

Other than those
existing on the
Petition Date, the
Reorganized Debtor will
not allow or permit any
occurrence of any
nature whatsoever

17

(including, without limitation, any adverse determination in any litigation, arbitration or governmental investigation or proceeding that has not been timely challenged, appealed, or otherwise disputed and reasonable progress is being made toward resolution) which could reasonably be expected to materially and adversely affect the financial condition or operations of the Reorganized Debtor, impair the ability of the Reorganized Debtor to perform its obligations under the Plan, effect the validity or enforceability of the material obligations of the Reorganized Debtor to the Bank, or the timely payment of the principal of and interest on the obligations owed to the Bank or other amounts payable by the Reorganized Debtor hereunder.

This Plan shall be construed under and in accordance with the laws of the State of California and, except as provided for in this Plan, this Plan shall not alter or affect the Bank's rights and

remedies including, without limitation, the priority of its liens and interests with respect to its collateral herein and its right to proceed with foreclosure on its collateral in the event of a default which is not timely cured.

Except to the extent expressly modified by specific provisions of this Plan, all the terms and conditions of the loan documentation between the Reorganized Debtor and the Bank including, without limitation, the personal guarantee of Kopple along with all related financial reporting requirements, shall remain in full force and effect.

Neither this Plan nor the provisions of this Plan will have any affect upon the Bank's rights and remedies against any non-debtor guarantor or co-borrower, or such non-debtor's property, except that upon the Effective Date, the Bank agrees that it has no right to pursue any action against Kopple or his assets on account of any default which occurred under the Current Bank Note

prior to the Effective Date. Likewise, no bankruptcy case filed by or against such non-debtor entity shall have any affect upon the rights, remedies or obligations created by these provisions.

**EVENTS OF DEFAULT AND REMEDIES**

1. Failure to pay any monetary payment required by this Plan when due, if such failure continues beyond five (5) business days after the Reorganized Debtors' receipt of notice of the default from the Bank, will result in the Reorganized Debtor being in default of the terms and conditions of this Plan as it relates to the Bank.

2. On any default resulting from a failure to make any monetary payment required by this Plan, or under the Bank's loan documents as modified by this Plan, to be made to the Bank, the Reorganized Debtor will be provided with ten (10) days written notice and an opportunity to cure such default.

3. The Reorganized

Debtor shall be given thirty (30) business days notice of any non-monetary default with an opportunity to cure.

4. Any notice required to be made to the Reorganized Debtor hereunder shall be made by e-mail and first class mail to the Reorganized Debtor and its counsel of record or other counsel that the Reorganized Debtor may direct in writing. Upon the expiration of any notice of any monetary default hereunder which is not timely cured, the Bank shall be entitled to exercise any and/or all of its lien rights and remedies.

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 2 | All claims which are secured by valid, properly perfected and enforceable mechanics liens against the Property ("Mechanic Lien Claims"), but only to the extent that the total amount of claims secured by liens against the Property which are senior to the liens which secure the Mechanic Lien Claims + the Mechanic Lien Claims do not exceed the fair market value of the Property.<br><br>The Debtor is aware of a total of six Mechanic Lien Claims in favor of the following parties in the following amounts: Picerne Construction Corp. ("Picerne") - $1,479,366.21; Teichert & Son, | Impaired; allowed claims in this class are entitled to vote on this Plan. | The treatment of the Mechanic Lien Claims under this Plan will depend upon whether the liens against the Property which secure the Mechanic Lien Claims are senior or junior in priority to the lien against the Property which secures the class 1 claim of the Bank.<br><br>Scenario One below describes the treatment of the Mechanic Lien Claims under this Plan if the liens against the Property which secure the Mechanic Lien Claims are junior in priority to the lien against the Property which secures the class 1 claim of the Bank.<br><br>Scenario Two below describes the treatment of the Mechanic Lien Claims under this Plan if the liens against the Property which secure the Mechanic Lien Claims are senior in priority to the lien against the Property which secures the class 1 claim of the Bank.<br><br>**Scenario One**. To the extent the fair market value of the Property at the time of confirmation of this |

22

Inc.          -
$87,651.63;
American
Automatic   Fire
Protection Inc.
- $24,639.40;
Contractors
Door        and
Millwork,   Inc.
- $37,899;
Hemington
Landscape
Services,   Inc.
- $39,631.50;
Mitchell   Jones
Concrete,   Inc.
- $74,052.20.

The       Debtor
believes    that
the        five
Mechanic    Lien
Claims     other
than        the
Mechanic    Lien
Claim       of
Picerne    are
included within
the    Mechanic
Lien  Claim  of
Picerne and are
not in addition
to the Mechanic
Lien  Claim  of
Picerne,
meaning    that
the       total
amount      of
Mechanic    Lien
Claims     are
$1,479,366.21.

The   extent  to
which       the
Mechanic    Lien
Claims   are  to
be   treated  as

Plan  exceeds  the  total
amount   of   the   class   1
claim  of  the  Bank,  the
Mechanic    Lien    Claims
will    be    considered
secured          claims
("Secured  Mechanic  Lien
Claims")   and   will   be
treated as follows:
1. The Secured Mechanic
Lien  Claims  will  accrue
interest   following   the
Effective  Date  at   the
non-default rate  of  six
percent  (6%)  per  annum
or   such   other   market
rate   of   interest   as
determined     by     the
Court.
2.  By  the  tenth  (10th)
day   of   each   of   the
first    sixty    calendar
months    following    the
Effective   Date   (with
the  first  such  month  to
include    the    calendar
month  of  the  Effective
Date   if   the   Effective
Date  occurs  before  the
10th  day  of  the  month,
and    the    first    such
month   to   include   the
calendar   month   after
the    month    of    the
Effective  Date  if   the
Effective   Date   occurs
after  the  10th  day  of
the    month),    the
Reorganized Debtor will
make    an    aggregate
monthly  payment  to  the
holders  of  the  Secured
Mechanic Lien Claims in
an   amount   that   will
satisfy  the  provisions
of         Section
1129(b)(2)(A)(i)  of  the

23

secured claims under this Plan will be dependent upon the following: (i) whether the Mechanic Lien Claims are secured by valid, properly perfected and enforceable mechanics liens against the Property; (ii) whether the liens which secure the Mechanic Lien Claims are senior or junior in priority to the liens which secure the Bank's claim; and (iii) the fair market value of the Property.

Bankruptcy Code. The Debtor estimates that monthly payments computed at an annual rate of interest of six percent (6%) per annum based upon a twenty-five year amortization would satisfy the provisions of Section 1129(b)(2)(A)(i) of the Bankruptcy Code.

3. All outstanding principal and interest owing on the Secured Mechanic Lien Claims will be fully due and owing to the holders of the Secured Mechanic Lien Claims on the date which is five years after the Effective Date.

4. The obligations of the Reorganized Debtor under this Plan to the holders of the Secured Mechanic Lien Claims will be secured by the same collateral which secured the Debtor's obligations to the holders of the Secured Mechanic Lien Claims on the Petition Date, with such collateral to have the same lien priority which existed on the Petition Date.

5. The Reorganized Debtor shall have the right, but not the obligation, to prepay any portion of the outstanding balance owing on account of the Secured Mechanic Lien

24

Claims at any time with no prepayment penalty (with the amount of the remaining monthly payments to be made to the holders of the Secured Mechanic Lien Claims to be reduced accordingly).

6. The Reorganized Debtor will deliver a written promissory note to the holders of Secured Mechanic Lien Claims on the Effective Date which will memorialize the terms of this Plan if requested to do so by the holders of Secured Mechanic Lien Claims.

Any portion of the Mechanic Lien Claims which do not constitute Secured Mechanic Lien Claims will be (i) considered non-priority general unsecured claims, (ii) included in class 3, and (iii) treated in the same manner as all other class 3 claims.

**Scenario Two.** All Mechanic Lien Claims will be considered Secured Mechanic Lien Claims and will be treated as follows:

1. The Secured Mechanic Lien Claims will accrue interest following the Effective Date at the non-default rate of the 30-day LIBOR + 1% per

annum or such other market rate of interest as determined by the Court.

2. By the tenth $(10^{th})$ day of each of the first sixty calendar months following the Effective Date (with the first such month to include the calendar month of the Effective Date if the Effective Date occurs before the 10th day of the month, and the first such month to include the calendar month after the month of the Effective Date if the Effective Date occurs after the 10th day of the month), the Reorganized Debtor will make an aggregate monthly payment to the holders of the Secured Mechanic Lien Claims in an amount that will satisfy the provisions of Section 1129(b)(2)(A)(i) of the Bankruptcy Code (but not to exceed $15,000 per month). The Debtor estimates that monthly payments computed at an annual rate of interest of three percent (3%) per annum based upon a twenty-five year amortization would satisfy the provisions of Section 1129(b)(2)(A)(i) of the Bankruptcy Code.

3. All outstanding

principal and interest owing on the Secured Mechanic Lien Claims will be fully due and owing to the holders of the Secured Mechanic Lien Claims on the date which is five years after the Effective Date.

4. The obligations of the Reorganized Debtor under this Plan to the holders of the Secured Mechanic Lien Claims will be secured by the same collateral which secured the Debtor's obligations to the holders of the Secured Mechanic Lien Claims on the Petition Date, with such collateral to have the same lien priority which existed on the Petition Date.

5. The Reorganized Debtor shall have the right, but not the obligation, to prepay any portion of the outstanding balance owing on account of the Secured Mechanic Lien Claims at any time with no prepayment penalty (with the amount of the remaining monthly payments to be made to the holders of the Secured Mechanic Lien Claims to be reduced accordingly).

6. The Reorganized Debtor will deliver a written promissory note to the holders of

| | | | Secured Mechanic Lien Claims on the Effective Date which will memorialize the terms of this Plan if requested to do so by the holders of Secured Mechanic Lien Claims. |
|---|---|---|---|

## 2. Classes of Priority Unsecured Claims

Certain priority claims that are referred to in Bankruptcy Code Sections 507(a)(3), (4), (5), (6), and (7) are required to be placed in classes. These types of claims are entitled to priority treatment as follows: the Bankruptcy Code requires that each holder of such a claim receive cash on the Effective Date equal to the allowed amount of such claim. However, a class of unsecured priority claim holders may vote to accept deferred cash payments of a value, as of the Effective Date, equal to the allowed amount of such claim.

The Debtor believes that there are no Section 507(a)(3), (4), (5), (6), or (7) priority unsecured claims. To the extent the Debtor does have any such allowed priority unsecured claims (which the Debtor does not believe will be the case), such claims will be paid in full out of the New Value Contribution on the later of the Effective Date and the date the Court enters an order allowing such priority claims.

## 3. Class of General Unsecured Claims

28

General unsecured claims are unsecured claims not entitled to priority under Bankruptcy Code Section 507(a). The following chart identifies this Plan's treatment of the class containing all of the Debtor's non-priority general unsecured claims (see Exhibit "1" to the Disclosure Statement for detailed information about each general unsecured claim):

29

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---------|-------------|----------------|-----------|
| 3 | All general unsecured claims which are not included in any other class (including the claims of any mechanic lien holders who do not hold class 2 allowed claims).<br><br>According to the Debtor's bankruptcy schedules, there are a total of up to approximately $6,978,268 of class 3 claims, inclusive of a claim in the amount of $2,923,031 in favor of Picerne (a portion of which may be included as a class 2 Secured Mechanic Lien Claim) and a claim in the amount of $3,504,953 in favor of affiliate Campbell Corners Limited Partnership I ("Campbell Corners"). | Impaired; allowed claims in this class are entitled to vote on this Plan. | On the Effective Date, the sum of one hundred thousand dollars ($100,000) from the New Value Contribution (the "Class 3 Funds") will be placed into a segregated trust account maintained by the Reorganized Debtor.<br><br>The Class 3 Funds shall be distributed on a pro rata basis (based upon the amount of their class 3 allowed claims) to the holders of class 3 allowed claims by the later of thirty days after (i) the Effective Date, and (ii) the date of entry of a Court order resolving the final disputed class 3 claim, except that Campbell Corners voluntarily agrees not to share in the distribution of the Class 3 Funds.<br><br>Assuming the total pool of class 3 allowed claims excluding Campbell Corners' claim is approximately $3,473,315, the Debtor estimates that the distribution of the Class 3 Funds will |

| | | | |
|---|---|---|---|
| | A detailed claims chart showing all claims which were scheduled by the Debtor and all proofs of claim which have been filed against the Debtor is attached as Exhibit "1" to the Disclosure Statement (the "Claims Chart"). It is the Debtor's intention to update the Claims Chart prior to the Disclosure Statement hearing to indicate which claims in the Claims Chart are objectionable to the Debtor, even if the Debtor has not yet filed formal objections to those claims. | | enable each holder of a class 3 allowed claim to receive a cash payment equal to approximately 2.87% of the amount of their class 3 allowed claim.<br><br>The foregoing treatment of class 3 claims shall be in full settlement and satisfaction of all class 3 claims. Holders of class 3 allowed claims will not receive any other property or distribution from the Debtor or the Reorganized Debtor other than their proportional share of the Class 3 Funds. |

### 4. Class of Interest Holders

Interest holders are the parties who hold an ownership interest (i.e., equity interest) in the Debtor. The following

31

chart identifies this Plan's treatment of the class of interest

holders:

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 4 | All equity holders, including holders of membership interests, partnership interests, common stock, preferred stock, stock options, warrants, etc. | Impaired; holders of class 4 interests are not entitled to vote on this Plan because they are deemed to have rejected this Plan pursuant to Section 1126(g) of the Bankruptcy Code. | On the Effective Date, all class 4 interests will be deemed cancelled, terminated and extinguished and of no further force and effect and will no longer constitute an equity interest in the Debtor without the need for either the Debtor or the class 4 interest holders to take any further action. Interest holders will not receive any distribution or retain any property under this Plan on account of their equity interests in one or more of the Debtor. |

**D.   Means of Effectuating this Plan and Implementation of this**

**Plan**

**1.   Funding for this Plan**

This Plan will be funded from the New Value Contribution to

be made by the El II Properties Trust u/d/t Dated July 1, 1983

(the "New Value Investor") and the future cash flow generated by the Property. The Debtor expects that the New Value Contribution will be in the amount of approximately $2,725,000. All cash payments which are requested to be made on or near the Effective Date will be funded from the New Value Contribution. The payments which are required to be made over time will be funded from the cash flow generated by the Property. The Debtor is of the belief that if the class 1 claim holder and/or the class 2 claim holders do not agree to extend the terms of the payout of their claims at the time of maturity, the Reorganized Debtor will be able to obtain replacement financing to pay their outstanding balances in full. To the extent replacement financing is insufficient to pay their outstanding balances in full, the New Value Investor will contribute the difference to the Reorganized Debtor.

### 2. Composition of the Reorganized Debtor

On the Effective Date, all of the equity interests in the Reorganized Debtor will be issued to the New Value Investor in exchange for the New Value Contribution.

### 3. Post-Confirmation Management

Kopple will serve as the managing member of the Reorganized Debtor. Kopple has substantial experience in managing and operating real estate. Kopple will be in charge of the Reorganized Debtor's overall business operations, finances and

strategic planning.    Kopple will not receive any compensation
from the Reorganized Debtor unless and until the class 1 claim
and class 2 claims have been paid in full.

### 4.    Disbursing Agent

The Reorganized Debtor shall serve as the disbursing agent
for purposes of making all distributions required to be made
under this Plan.    The Reorganized Debtor will not charge any
disbursing agent fee for making such distributions.

### 5.    Objections to Claims

The Debtor or the Reorganized Debtor, as the case may be,
will file objections to all claims which are inconsistent with
the Debtor's books and records unless the Debtor deems the
inconsistency to be insignificant.    All objections to claims
must be filed within thirty (30) days following the Effective
Date.    With respect to disputed claims which are not resolved
prior to the Effective Date, the Reorganized Debtor will have
the authority, in its sole and absolute discretion, in the
reasonable exercise of its business judgment, to settle or
compromise any disputed claim without further notice or Court
approval.    As provided by Section 502(c) of the Bankruptcy Code,
the Court may estimate any contingent or unliquidated disputed
claim for purposes of confirmation of this Plan.    The
Reorganized Debtor will have the authority to file any
objections to claims following the confirmation of this Plan,

34

and the Court shall retain jurisdiction over the Debtor, the Reorganized Debtor and this case to resolve such objections to claims following the confirmation of this Plan. Nothing contained in this Plan shall constitute a waiver or release by the Debtor or the Reorganized Debtor of any rights of setoff or recoupment, or of any defense, the Debtor or the Reorganized Debtor may have with respect to any claim.

**6. Avoidance Actions**

The Debtor is not aware of any payments or transfers made during the ninety-day preference period for non-insiders or the one-year period for insiders which would be avoidable as preferential, as the Debtor believes that all such payments and transfers would be subject to some form of ordinary course, contemporaneous exchange or new value defense. The Debtor is also not aware of any fraudulent conveyances which have occurred and which need to be avoided. All claims, causes of action and avoidance actions of the Debtor and its estate are preserved by this Plan, and the Reorganized Debtor shall have full power and authority to settle, adjust, retain, enforce or abandon any claim, cause of action or avoidance actions as the representative of the Debtor's estate under section 1123(b) of the Bankruptcy Code or otherwise, regardless of whether such claims, causes of action or avoidance actions were commenced prior or subsequent to the Effective Date.

35

## 7. Exemption from Transfer Taxes

Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, transfer or exchange of a security, or the making or delivery of an instrument of transfer under a plan confirmed under section 1129 of the Bankruptcy Code, may not be taxed under any law imposing a stamp tax or similar tax. The taxes from which such transfers are exempt include stamp taxes, recording taxes, sales and use taxes, transfer taxes, and other similar taxes.

## 8. Employment of Professionals By the Reorganized Debtor and Payment of Professional Fees and Expenses Incurred after the Effective Date

The Reorganized Debtor shall have the authority to employ professionals as the Reorganized Debtor deems appropriate and to pay the fees and expenses incurred by such professionals without any further order of the Court.

## 9. Distributions to be Made Pursuant to this Plan

Except as otherwise agreed to by the Reorganized Debtor in writing, distributions to be made to holders of allowed claims pursuant to this Plan may be delivered by regular mail, postage prepaid, to the address shown in the Debtor's schedules, as they may from time to time be amended in accordance with Bankruptcy Rule 1000, or, if a different address is stated in a proof of claim duly filed with the Bankruptcy Court, to such address.

36

Checks issued to pay allowed claims shall be null and void if not negotiated within sixty (60) days after the date of issuance thereof.

### 10. Exculpations and Releases

To the maximum extent permitted by law, neither the Debtor, nor the Reorganized Debtor, nor any of their employees, officers, directors, shareholders, agents, members, representatives, or professionals employed or retained by any of them, whether or not by Bankruptcy Court order, shall have or incur liability to any person or entity for any act taken or omission made in good faith in connection with or related to the formulation and implementation of this Plan, or a contract, instrument, release, or other agreement or document created in connection therewith, the solicitation of acceptances for or confirmation of this Plan, or the consummation and implementation of this Plan and the transactions contemplated therein.

### 11. Injunctions

The Plan Confirmation Order shall enjoin the prosecution, whether directly, derivatively or otherwise, of any claim, obligation, suit, judgment, damage, demand, debt, right, cause of action, liability or interest released, discharged or terminated pursuant to this Plan. Except as provided in this Plan or the Plan Confirmation Order, as of the Effective Date,

37

all entities that have held, currently hold or may hold a claim or other debt or liability that is discharged or an interest or other right of an equity security holder that is extinguished pursuant to the terms of this Plan are permanently enjoined from taking any of the following actions against the Debtor, the Reorganized Debtor, or their property on account of any such discharged claims, debts or liabilities or extinguished interests or rights: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any lien or encumbrance; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtor; and (v) commencing or continuing any action in any manner, in any place, that does not comply with or is inconsistent with the provisions of this Plan. By accepting distribution pursuant to this Plan, each holder of an allowed claim receiving distributions pursuant to this Plan shall be deemed to have specifically consented to the injunctions set forth in this Section.

## 12. Executory Contracts and Unexpired Leases

On the Effective Date, all of the Debtor's remaining executory contracts and unexpired leases which have not previously been assumed or rejected by the Debtor and which are

38

identified in Exhibit "2" to the Disclosure Statement shall be deemed to be assumed by the Debtor and to become valid and binding executory contracts and unexpired leases of the Reorganized Debtor (the "Debtor's Assumed Contracts and Leases"). By 5:00 p.m. PST on the day prior to the date of the Plan confirmation hearing, the Debtor shall file a pleading with the Court identifying all of the Debtor's Assumed Contracts and Leases. All of the Debtor's remaining executory contracts and unexpired leases which have not previously been assumed or rejected by the Debtor and which are not included among the Debtor's Assumed Contracts and Leases shall be deemed rejected effective as of 11:59 PST on the Effective Date. With respect to all of the Debtor's Assumed Contracts and Leases for which a default exists on the Effective Date, the Debtor will be required to (a) cure or provide adequate assurance that the Reorganized Debtor will promptly cure any default existing under any such executory contracts and unexpired leases, (b) compensate or provide adequate assurance that the Reorganized Debtor will promptly compensate any other party to such executory contracts and unexpired leases for any actual pecuniary loss to such parties resulting from any default existing under any such executory contracts and unexpired leases, and (c) provide adequate assurance of future performance under such executory contracts and unexpired leases. **THE BAR**

39

**DATE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM ARISING FROM THE REJECTION OF AN UNEXPIRED LEASE OR EXECUTORY CONTRACT WHICH IS REJECTED ON THE EFFECTIVE DATE WILL BE THIRTY DAYS AFTER THE EFFECTIVE DATE.** Any claim based on the rejection of an unexpired lease or executory contract will be barred if the proof of claim is not timely filed, unless the Court orders otherwise.

**13. Changes in Rates Subject to Regulatory Commission Approval**

The Debtor is not subject to governmental regulatory commission approval of its rates.

**14. Retention of Jurisdiction**

After confirmation of this Plan and occurrence of the Effective Date, in addition to jurisdiction which exists in any other court, the Court will retain such jurisdiction as is legally permissible including for the following purposes:

i. To resolve any and all disputes regarding the operation and interpretation of this Plan and the Plan Confirmation Order;

ii. To determine the allowability, classification, or priority of claims and interests upon objection by the Debtor, or by other parties in interest with standing to bring such objection or proceeding and to consider any objection to claim

40

or interest whether such objection is filed before or after the Effective Date;

iii. To determine the extent, validity and priority of any lien asserted against property of the Debtor or property of the Debtor's estate;

iv. To construe and take any action to enforce this Plan, the Plan Confirmation Order, and any other order of the Court, issue such orders as may be necessary for the implementation, execution, performance, and consummation of this Plan, the Plan Confirmation Order, and all matters referred to in this Plan and the Plan Confirmation Order, and to determine all matters that may be pending before the Court in this case on or before the Effective Date with respect to any person or entity related thereto;

v. To determine (to the extent necessary) any and all applications for allowance of compensation and reimbursement of expenses of professionals for the period on or before the Effective Date;

vi. To determine any request for payment of administrative expenses;

vii. To determine motions for the rejection, assumption, or assignment of executory contracts or unexpired leases filed before the Effective Date and the allowance of any claims resulting therefrom;

41

viii.   To   determine   all   applications,   motions, adversary   proceedings,   contested   matters,   and   any   other litigated matters instituted during the pendency of this case whether   before,   on,   or   after   the   Effective   Date   including avoidance causes of action;

ix.   To   determine   such   other   matters   and   for   such other   purposes   as   may   be   provided   in   the   Plan   Confirmation Order;

x.   To   modify   this   Plan   under   Section   1127   of   the Bankruptcy   Code   in   order   to   remedy   any   apparent   defect   or omission in this Plan or to reconcile any inconsistency in this Plan so as to carry out its intent and purpose;

xi.   Except   as   otherwise   provided   in   this   Plan   or   the Plan   Confirmation   Order,   to   issue   injunctions,   to   take   such other actions or make such other orders as may be necessary or appropriate to restrain interference with this Plan or the Plan Confirmation   Order,   or   the   execution   or   implementation   by   any person or entity of this Plan or the Plan Confirmation Order;

xii.   To   issue   such   orders   in   aid   of   consummation   of this Plan and the Plan Confirmation Order, notwithstanding any otherwise   applicable   nonbankruptcy   law,   with   respect   to   any person   or   entity,   to   the   fullest   extent   authorized   by   the Bankruptcy Code or Bankruptcy Rules; and

42

xiii.    To   enter   a   final   decree   closing   this
Chapter 11 case.

### III. **EFFECT OF CONFIRMATION OF THIS PLAN**

**A.    Discharge.**

The   Debtor   will   receive   a   discharge   under   this   Plan
pursuant to and in accordance with the provisions of Section
1141 of the Bankruptcy Code because there has not been a
liquidation of all or substantially all of the property of the
Debtor's   estate   and   because   the   Reorganized   Debtor   will   be
continuing with the Debtor's current business operations.

**B.    Modification of this Plan.**

The   Debtor   may   modify   this   Plan   at   any   time   before
confirmation.   However, the Court may require a new disclosure
statement and/or re-voting on this Plan if the Debtor modify
this Plan before confirmation.   The Debtor may also seek to
modify this Plan at any time after confirmation of this Plan so
long as (1) this Plan has not been substantially consummated and
(2) the Court authorizes the proposed modifications after notice
and a hearing.

**C.    Post-Confirmation Status Reports.**

Until a final decree closing the Debtor's Chapter 11 case
is entered, the Reorganized Debtor shall file a quarterly status

43

report with the Court explaining what progress has been made toward consummation of the confirmed Plan.

**D.    Post-Confirmation Conversion/Dismissal.**

A creditor or any other party in interest may bring a motion to convert or dismiss the case under Section 1112(b) of the Bankruptcy Code after this Plan is confirmed if there is a default in performing this Plan. If the Court orders the case converted to Chapter 7 after this Plan is confirmed, then all property that had been property of the Debtor's Chapter 11 estate, and that has not been disbursed pursuant to this Plan, will revest in the Chapter 7 estate, and the automatic stay will be reimposed upon the revested property, but only to the extent that relief from stay was not previously authorized by the Court during this case. The Plan Confirmation Order may also be revoked under very limited circumstances. The Court may revoke the Plan Confirmation Order if it was procured by fraud and if a party in interest brings an adversary proceeding to revoke confirmation within 180 days after the entry of the Plan Confirmation Order.

**E.    Final Decree.**

Once this estate has been fully administered as referred to in Bankruptcy Rule 3022, the Reorganized Debtor shall file a motion with the Court to obtain a final decree to close this

44

1  case.    The Reorganized Debtor shall be responsible for the

2  timely payment of all fees incurred pursuant to 28 U.S.C.

3  Section 1930(a)(6).

4  Dated: November 13, 2009

5  <u>Presented By</u>:

6  LEVENE, NEALE, BENDER, RANKIN & BRILL L.L.P.

7

8  By: <u>/s/ Ron Bender</u>
        RON BENDER
9       Attorneys for Chapter 11
        Debtor and Plan Proponent
10

11  CASTELLINO VILLAS, a K.F. LLC
12  a California limited liability company

13

14  ROBERT C. KOPPLE
    Authorized Representative

15

16

17

18

19

20

21

22

23

24

25

                              44