RON BENDER (SBN 143364)
BETH ANN R. YOUNG (SBN 143945)
KRIKOR J. MESHEFEJIAN (SBN 255030)
LEVENE, NEALE, BENDER, RANKIN & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
Email: rb@lnbrb.com; bry@lnbrb.com; kjm@lnbrb.com

Counsel for Chapter 11 Debtor and Debtor in Possession

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| In re: | ) Case No. 2:09-bk-29228-ER |
| | ) |
| CASTELLINO VILLAS, A K.F. LLC, | ) Chapter 11 |
| a California limited liability company, | ) |
| | ) |
| Debtor. | ) DEBTOR'S NOTICE OF MOTION AND |
| | ) MOTION TO VALUE REAL PROPERTY; |
| | ) MEMORANDUM OF POINTS AND |
| | ) AUTHORITIES |
| | ) |
| | ) [DECLARATION OF ROB A. DETLING, |
| | ) MAI PREVIOUSLY FILED IN SUPPORT |
| | ) THEREOF, AND SUPPLEMENTAL |
| | ) DECLARATION OF ROB A. DETLING, |
| | ) MAI FILED CONCURRENTLY |
| | ) HEREWITH] |
| | ) |
| | ) Valuation Hearing: |
| | ) Date:  April 14, 2010 |
| | ) Time:  10:00 a.m. |
| | ) Place: Courtroom 1568 |
| | )         255 East Temple Street |
| | )         Los Angeles, CA 90012 |

**PLEASE TAKE NOTICE** that at a hearing to be held on April 14, 2010 at 10:00 a.m., before the Honorable Ernest M. Robles, United States Bankruptcy Judge for the Central District of California, in Courtroom 1568 located at 255 East Temple Street, Los Angeles, California, Castellino Villas, A K.F. LLC, the Debtor and Debtor in Possession in the above-referenced Chapter 11 bankruptcy case (the "Debtor"), will request the Court, pursuant to Section 506 of the Bankruptcy Code and Bankruptcy Rule 3012, to value the real property owned by the Debtor in accordance with the Revised Appraisal attached as Exhibit "1" to the Supplemental Declaration of Rob A. Detling, MAI filed concurrently herewith. The Revised Appraisal amends and supersedes the Appraisal filed with the Court on March 8, 2010.

The Debtor is the owner of a 120-unit apartment building located in Elk Grove, California, which is commonly known as Castellino Villas (the "Property"). In connection with the Debtor's pending First Amended Plan Of Reorganization (the "Plan"), the Debtor requires the Court to determine the value of the Property. The Debtor retained FirstService PGP Valuation ("PGP") to prepare an appraisal of the Property (the "Appraisal" and "Revised Appraisal"). The Appraisal and Revised Appraisal were prepared by Mr. Detling and by P. Robert Steed of PGP, both of whom are Certified General Real Estate Appraisers. The Revised Appraisal amends and supersedes the Appraisal, but there is no overall valuation difference between the Appraisal and the Revised Appraisal.[1] As indicated in the Revised Appraisal, both an income approach and a sales comparison approach were used. As further indicated in the Revised Appraisal, PGP concluded that **the As-Is Market Value of the Property as of February 11, 2010 is $11,900,000.**

This Motion is based upon this Notice, the Memorandum, the concurrently filed Declaration of Rob A Detling, MAI, the Appraisal, the Revised Appraisal, the entire record of this case and any other evidence properly presented to the Court in support of this Motion. The Debtor believes that the Appraisal and Revised Appraisal (which conclude identical values)

---

[1] The Revised Appraisal corrected typographical and numerical errors found in the Appraisal (see Supplemental Declaration of Rob A. Detling, MAI, para. 5), but the revisions have not had any effect on the value of the Property.

1

accurately reflect the current fair market value of the Property and requests, by way of this Motion, Notice of Motion, and evidence submitted herewith, that the Court value the Property at $11,900,000 for Plan confirmation purposes.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Bankruptcy Rule 9013-1(f), any opposition to the Motion must be filed with the Clerk of the United States Bankruptcy Court and served upon the United States Trustee as well as counsel for the Debtor at the address located in the upper left-hand corner of the first page of this Notice and Motion by no later than 14 days before the hearing on the Motion.

**PLEASE TAKE FURTHER NOTICE** that the failure to file and serve a timely response to this Motion may be deemed by the Court to be consent to the granting of the relief requested in this Motion.

**WHEREFORE**, the Debtor respectfully requests that the Court enter an order finding that the current fair market value of the Property is $11,900,000, in accordance with the findings of the Revised Appraisal, and granting such other and further relief as the Court deems just and appropriate under the circumstances.

Dated: March 24, 2010                CASTELLINO VILLAS, a K.F. LLC

                                     _/s/ Ron Bender_
                                     RON BENDER
                                     BETH ANN R. YOUNG
                                     KRIKOR J. MESHEFEJIAN
                                     LEVENE, NEALE, BENDER, RANKIN
                                     & BRILL L.L.P.
                                     Counsel for Chapter 11 Debtor and Debtor in Possession

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## STATEMENT OF FACTS

**A.    Relevant Case Background**

1. The Debtor commenced its bankruptcy case by filing a voluntary petition under Chapter 11 of 11 U.S.C. § 101 et seq. (the "Bankruptcy Code") on July 24, 2009 (the "Petition Date"). The Debtor continues to operate its business, manage its financial affairs and operate its bankruptcy estate as a debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

2. The Debtor was formed for the purpose of obtaining financing, developing, marketing and renting out the real property located at 3300 Renwick Avenue, in Elk Grove, California, upon which the Debtor built a 120-unit apartment building commonly known as Castellino Villas (the "Property").

3. The Court previously approved the "Disclosure Statement Describing Debtor's Plan Of Reorganization (Dated January 8, 2010)" (the "Disclosure Statement"), pursuant to a Court order entered on March 3, 2010 [Docket No. 142]. The initial confirmation hearing on the "Debtor's First Amended Plan Of Reorganization (Dated January 8, 2010)" (the "Plan") will be held on April 14, 2010. The Debtor has transmitted the Disclosure Statement and Plan to creditors and parties in interest for the purpose of voting on the Debtor's Plan. As has been discussed orally at various prior Court hearings, as part of the Plan confirmation process, the Court will be required to determine the current fair market value of the Property.

4. In order to determine the fair market value of the Property, the Debtor employed FirstService PGP Valuations ("PGP") as the appraiser of the Property. The Court approved the Debtor's employment of PGP as the Debtor's real property appraiser, pursuant to a Court order entered on March 3, 2010 [Docket No. 143].

///

///

**B.    The Revised Appraisal**

5.    PGP has prepared an appraisal of the Property (the "Appraisal"). The Appraisal was prepared by Rob A. Detling, MAI, and by P. Robert Steed, of PGP, both of whom are Certified General Real Estate Appraisers. As indicated in the Appraisal, PGP concluded that **the As-Is Market Value of the Property as of February 11, 2010 is $11,900,000.** The Appraisal was filed with the Court on March 8, 2010, in connection with Mr. Detling's Declaration.

6.    Subsequent to filing the Appraisal with the Court, Mr. Detling made minor revisions to the Appraisal which did not result in a different valuation for the Property. These additional revisions more closely track the actual income and expenses of the Property, save for a few minor exceptions that have no overall effect on the value of the Property.[2] The revised appraisal (the "Revised Appraisal") is attached to the Supplemental Declaration of Mr. Detling filed concurrently herewith. **The Revised Appraisal hereby amends and supersedes the Appraisal. As indicated in the Revised Appraisal, the As-Is Market Value of the Property as of February 11, 2010 is $11,900,000.**

---

[2] The Revised Appraisal revises the "Rental Income" for both 2008 and 2009 by removing the "Rent Free Unit (MGR)" calculation found on the Debtor's income and expense statements from the "Rental Income" line item found in the Chart, because this negative number is already included in the "On-Site Management" expense line item located in the Chart. The removal of this item from "Rental Income" results in a slight but inconsequential increase in the "Rental Income" listed in the Chart (a $4,538 difference for 2008 and a $9,899 difference for 2009).

The Revised Appraisal corrects a typographical error found in the "Miscellaneous Income" line item for 2008 in the Chart. The correction decreased 2008 "Miscellaneous Income" by $90.

The Revised Appraisal corrects a typographical error found in the "Utilities" line item for 2008 in the Chart. The correction increased the 2008 "Utilities" expense by $2,000.

The Revised Appraisal corrects the "Repairs and Maintenance" expense line item for 2008 in the Chart. The Appraisal had included $18,467 of the "Grounds Payroll" expense found on the Debtor's income and expense statements as a portion of the "Repairs and Maintenance" line item. The Chart in the Appraisal had also included this $18,467 amount in the "On-Site Management" expense line item. The Chart in the Revised Appraisal revises this and includes the $18,467 of yearly "Grounds Payroll" only in the "On-Site Management" line item in the Chart.

The Revised Appraisal corrects the "General/Administrative" expense line item for 2009. The Appraisal had listed this expense at $78,068, but that amount was based on calculations using budgeted amounts of expenses in that category as opposed to the actual expenses incurred by the Debtor. This line item for 2009 has been revised, which leads to a decrease in the "General/Administrative" expense line item for 2009 in the amount of $9,718.

4

7. In connection with conducting their Revised Appraisal of the Property, Mr. Detling and Mr. Steed performed a formal inspection of the Property. The preparation of the Revised Appraisal also included an inspection of the Property, reviewing assessor's maps, reviewing income and expense information, reviewing county records for information on taxes and assessments, inspecting the neighborhood of the Property, gathering and confirming rent comparables and improved sales from immediate and competing neighborhoods, analyzing supply and demand conditions in the area, and applying traditional approaches to value to arrive at an indication of value for the Property. The relevant market data was obtained from developers, real estate agents/brokers, appraisers, lenders, and various sources of secondary market data. In addition, representatives from various municipal offices were also contacted to obtain relevant market and/or property information.

## C. Valuation Methods.

8. In the Revised Appraisal, PGP reviews the three common methods which are used to arrive at a fair market value for a property such as the Property herein – the Cost Approach, the Income Approach and the Sales Comparison Approach.

9. Cost Approach is based upon the principle that the value of the Property is significantly related to its physical characteristics, and that no one would pay more for a facility than it would cost to build a like facility in today's market on a comparable site. In this approach, the market value of the site is estimated and added to the estimated depreciated value of the improvements. Due to current market conditions, resulting in lack of current construction cost comparable and land sale data, and lack of development cost detail for the subject property, PGP concluded that the applicability and reliability of the Cost Approach is greatly diminished and that a reliable estimate of the fair market value of the Property is achieved without use of the Cost Approach. (See pages 27 and 49 of the Revised Appraisal).

10. Income Approach is based on the premise that properties similar to the subject Property are income producing, and that investors purchase these properties based upon their income-producing ability. In the Income Approach, market rents for the subject Property are

5

estimated, the applicable operating expenses are deducted, and the resulting net income is capitalized into a value estimate. The Income Approach is based on an analysis of information extracted from the market, and provides a comparison of the subject properties to properties of similar character and income-producing ability. PGP concluded that the Income Approach is the applicable and primary method for valuing the Property and was used by PGP in its analysis. (See pages 27 and 49 of the Revised Appraisal).

11.   <u>Sales Comparison Approach</u> is based on the principle of substitution. This principle states that no one would pay more for the subject Property than the value of a similar property in the market. This approach analyzes sales of comparable properties with regard to the nature and condition of each sale. Comparisons are made for varying physical characteristics. PGP concluded that while the Sales Approach is an applicable valuation approach, it was ultimately not given weight because although several recent Sacramento area sales were available, the sales lack the interior finish quality of the Property, though several have superior locations relative to the Property which is located in Elk Grove. (See pages 27 and 49 of the Revised Appraisal).

**D.   Valuation Results**

12.   Using the Income Approach method of valuation, PGP concluded that the Property has a stabilized annual Net Operating Income of $947,160 and that an appropriate market capitalization rate to use is 7.7%. When $947,160 is divided by 7.7%, a fair market value of $12,300,777 is obtained before adjustments described below. (See page 43 of the Revised Appraisal).

13.   Using the Sales Comparison Approach method of valuation, PGP used five comparable sales, all of which are located in the Sacramento area and sold since June, 2009. PGP selected the five comparable sales due to their similarities in appeal, location and quality to the Property. PGP concluded that although the five selected comparables vary in terms of age, condition, size, design, appeal and amenities, they represent the most recent comparables

available for this valuation analysis. (See page 44 of the Revised Appraisal). A description of the five comparable sales used is contained on pages 45-48 of the Revised Appraisal.

14. Using the Sales Comparison Approach method of valuation, PGP concluded that the Property has a fair market value of $100,000 per unit and therefore has an overall fair market value of $12,000,000 (before adjustments described below) computed by multiplying the 120 units of the Property by the $100,000 per unit price. (See page 48 of the Revised Appraisal).

15. The analysis of value conclusions is the final step in the appraisal process and involves the weighing of the individual valuation techniques in relationship to their substantiation by market data and the reliability and applicability of each valuation technique to the Property.

16. PGP concluded that the Cost Approach is not a valid indicator of value for the Property and was excluded from PGP's analysis due to current market conditions. PGP concluded that the elimination of the Cost Approach did not diminish the reliability of its value conclusion. (See page 49 of the Revised Appraisal).

17. PGP concluded that the Income Approach to value is generally considered to be the best and most accurate measure of the value of income-producing properties. In its analysis, the direct capitalization method was utilized by PGP. The value estimates by this approach are based upon the premise that income-producing properties are owned for their income-producing ability. As such, they best reflect the analysis which knowledgeable buyers and sellers carry out in their decision-making processes regarding this type of property. PGP concluded that the market data used in its analysis is reliable and along with leasing activity at the Property allowed for reliable market rent conclusions. A reliable analysis of expenses was performed. Market data allowed for a reliable conclusion of the capitalization rate. The Income Approach was given primary weight by PGP in its analysis. (See page 49 of the Revised Appraisal).

18. In the Sales Comparison Approach, the price per unit method was used. This approach was not given weight by PGP in its analysis because although several recent Sacramento area sales were available, the sales lack the interior finish quality of the Property,

though several have superior locations relative to the Property which is located in Elk Grove. (See page 49 of the Revised Appraisal).

19. After considering all factors relevant to the valuation of the Property, PGP concluded that the fair market value of the Property on February 11, 2010 before adjustments was $12,300,000, and that the actual fair market value of the Property on February 11, 2010 after adjustments was $11,900,000. (See page 49 of the Revised Appraisal).

**E.    Value Adjustments**

20. PGP concluded that there were approximately $400,000 of adjustments that needed to be applied to its valuation conclusion (which reduced the valuation conclusion from $12,300,000 to $11,900,000) because the $12,300,000 valuation conclusion assumed that the Property is not encumbered by bonds, has no deferred maintenance and currently generates market rents. PGP concluded that $400,000 of adjustments were appropriate as follows:

21. **Mello Roos Bonds** – There are two Mello-Roos bonds which encumber the Property. PGP concluded that the present value of the future payment obligations related to those Mello Roos Bonds is approximately $330,000, resulting in a $330,000 decrease to the actual fair market value of the Property. (See page 50 of the Revised Appraisal).

22. **Deferred Maintenance** – PGP concluded that there is $90,000 of deferred maintenance at the Property related to new exterior paint and spa pump equipment replacement, resulting in a $90,000 decrease to the actual fair market value of the Property. (See page 50 of the Revised Appraisal).

23. **Rent Gain** – PGP concluded that there is an estimated average remaining lease term of 6 months for currently occupied units with tenants paying above-market rent which results in a benefit of approximately $20,000 in rent gain (i.e., the difference between market rent and average contract rent for those occupied units) before market rents are utilized, resulting in a $20,000 increase to the actual fair market value of the Property. (See page 50 of the Revised Appraisal).

24. After application of these items, **PGP concluded that the As-Is Market Value of the Property as of February 11, 2010 was $11,900,000.**

## II.

## THE COURT SHOULD VALUE THE PROPERTY IN ACCORDANCE WITH THE REVISED APPRAISAL

Section 506 of the Bankruptcy Code governs the substantive determination of the valuation of secured claims which necessarily entail a determination of the value of the *security* – in this case, the Property. Specifically, Section 506(a) of the Bankruptcy Code provides that "[a]n allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent that the value of such creditor's interest . . . is less that the amount of such allowed claim." Section 506(a) further provides that the value of the creditor's interest "shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest."

Rule 3012 of the Federal Rules Of Bankruptcy Procedure provides the procedural framework for the valuation. Specifically, Rule 3012 provides that "[t]he court may determine the value of a claim secured by a lien on property in which the estate has an interest on motion of any party in interest and after a hearing on notice to the holder of the secured claim and any other entity as the court may direct."

The Bankruptcy Code does not set forth any bright line method to conduct valuation hearings. rather, valuation is determined on a case-by-case basis. In this case, PGP concluded that the Income Approach to value is generally considered to be the best and most accurate measure of the value of income-producing properties such as the Property. See In re Garsal Realty, Inc., 98 B.R. 140, 153-154 (Bankr. N.D. N.Y. 1989) (utilizing income approach in valuing apartment complex). In connection with the confirmation of the Debtor's Plan, the Debtor requires the Court to determine the fair market value of the Property because the value of the Property will affect the treatment of certain claims under the Plan. The Revised Appraisal

9

has been prepared by highly qualified, licensed professionals employed by the Debtor's estate pursuant to this Court's order. The Revised Appraisal is a self-contained appraisal that thoroughly addresses the applicable methods for valuing the Property. Pursuant to the Revised Appraisal, the Debtor requests that this Court find that the fair market value of the Property is $11.9 million.

## III.

## CONCLUSION

The Debtor respectfully requests that this Court enter an order granting this Motion, determining that the fair market value of the Property is $11.9 million in accordance with the value conclusion proffered in the Revised Appraisal and as further supported by oral testimony which will be provided at the valuation hearing. The Debtor also requests the Court to grant such other and further relief as the Court deems just and proper under the circumstances of this case.

Dated: March 24, 2010                    CASTELLINO VILLAS, a K.F. LLC

                                                             */s/ Ron Bender*
RON BENDER
BETH ANN R. YOUNG
KRIKOR J. MESHEFEJIAN
LEVENE, NEALE, BENDER, RANKIN
& BRILL L.L.P.
Counsel for Chapter 11 Debtor and Debtor in Possession

| In re:<br>CASTELLINO VILLAS, A K F LLC,<br>Debtor(s). | CHAPTER 11<br>CASE NUMBER 2:09-bk-29228-ER |
|---|---|

NOTE: When using this form to indicate service of a proposed order, DO NOT list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 10250 Constellation Boulevard, Suite 1700, Los Angeles, California 90067.

A true and correct copy of the foregoing document described as **DEBTOR'S NOTICE OF MOTION AND MOTION TO VALUE REAL PROPERTY; MEMORANDUM OF POINTS AND AUTHORITIES** for the month ending February 28, 2010, will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **March 24, 2010** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:
- Todd M Arnold    tma@lnbrb.com
- Ron Bender    rb@lnbrb.com
- Richard W Brunette    rbrunette@sheppardmullin.com
- Ori Katz    okatz@sheppardmullin.com
- Dare Law    dare.law@usdoj.gov
- Krikor J Meshefejian    kjm@lnbrb.com
- Mary E Olden    molden@mhalaw.com, akauba@mhalaw.com
- Robert K Sahyan    rsahyan@sheppardmullin.com
- James A Tiemstra    jat@tiemlaw.com, sml@tiemlaw.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov

II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served):
On **March 24, 2010**, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

By Overnight Delivery:
The Hon. Ernest M. Robles
United States Bankruptcy Court
255 East Temple Street, Cham. 1560
Los Angeles, CA 90012

☒    See attached service list for service by U.S. mail.

III. **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **March 24, 2010,** I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct

| March 24, 2010 | Carla Sharpe | /s/ Carla Sharpe |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009                                                                                                               F 9013-3.1

Castellino Villas, a K.F. LLC
File No. 4434
Secured

| | | |
|---|---|---|
| | Bank of the West<br>A Construction Finance<br>3000 Oak Road, Suite 400<br>Walnut Creek, CA 94597 | Counsel to Bank of the West<br>James A. Tiemstra<br>Law Offices of James A. Tiemstra<br>Tribune Tower, 15th Floor<br>409 Thirteenth Street<br>Oakland, CA 94612 |
| Bank of the West<br>J. Michael Shepherd, President, CEO,<br>And Director<br>180 Montgomery Street<br>San Francisco, CA 94104 | Picerne<br>1420 East Missouri Avenue, Ste. 100<br>Phoenix, AZ 85014 | Counsel for Picerne<br>Meredith A. Jones/Scott Hennigh<br>Sheppard Mullin Richter & Hampton LLP<br>Four Embarcadero Center, 17th Floor<br>San Francisco, CA 94111 |
| American Automatic Fire Protection<br>2525 Q Street<br>Rio Linda, CA 95673 | BSI Building Products<br>4111 Greenbriar, Suite E<br>Stafford, TX 77477 | Contractors Door & Millwork<br>3141 W. Lewis Avenue<br>Phoenix, AZ 85009 |
| CVF<br>P.O. Box 452<br>Escalon, CA 95320-0452 | Day Tile & Stone<br>6705 Eakridge Way<br>Elk Grove, CA 95758 | Easy Lift Door Company<br>2871 Howe Avenue<br>Sacramento, CA 95821 |
| Front Range Drywall<br>12061 Pennsylvania Street, Unit A-106<br>Thornton, CO 80241 | Hemington Landscape Services<br>4170 Business Drive<br>Shingle Springs, CA 95682 | Mitchell Concrete<br>3185 Fitzgerald Road<br>Rancho Cordova, CA 95742 |
| Ridge Electric<br>3190 Central Avenue<br>Roseville, CA 95747 | R.W. Stucco, Inc.<br>2570 Marko Street<br>Las Vegas, NV 89115 | Sacramento Building<br>500 Sequoia Pacific Blvd.<br>Sacramento, CA 95814 |
| Teichert<br>P.O. Box 13557<br>Sacramento, CA 95853-9935 | **Counsel for A Teichert & Son**<br>Mary E. Olden Esq<br>John L. Shipley<br>McDonough, Holland & Allen PC<br>500 Capitol Mall, 18th Floor<br>Sacramento, CA 95814 | Sacramento County Tax Collector<br>Attn: Bankruptcy<br>700 H Street, Room 1710<br>Sacramento, CA 95814 |
| **Counsel for Mitchell Jones Concrete**<br>Charles A. Tweedy, Esq.<br>Parshall & Tweedy<br>11341 Gold Express Drive, Ste. 110<br>Gold River, CA 95670 | **Counsel for Contractors Door & Millwork**<br>Dennis G. Cosso, Esq.<br>414 S. First Ave<br>Arcadia, CA 91006 | **Counsel for American Auto Fire Protection**<br>Jeffrey G Olsen, Esq.<br>Fennell & Olsen<br>90 Blue Ravine Rd., Ste. 170<br>Folsom, CA 95630 |
| **Counsel for Hemington Landscape**<br>Evan D. Williams, Esq.<br>1528 Eureka Rd., Ste. 101<br>Roseville, CA 95661 | | |

**Castellino Villas, a K.F. LLC**
**File No. 4434**
**20 Largest**

Castellino Villas, a K.F. LLC
11340 Olympic Blvd., #210
Los Angeles, CA 90064

Dare Law
U.S. Trustee
725 S. Figueroa Street, 26th Floor
Los Angeles, CA 90017

Alhambra & Sierra Springs
P.O. Box 660579
Dallas, TX 75266

Audio Images
735 Bryan Street
San Francisco, CA 94107

Bell Rosenberg & Hughes LLP
1300 Clay Street, Suite 1000
Oakland, CA 94612

C&R Landscape
P.O. Box 776
Rocklin, CA 95677

Chip Pest Control
P.O. Box 7634
Citrus Heights, CA 95621

Everclear Pool Service
P.O. Box 277532
Sacramento, CA 95827

Excell Carpet Care
5325 Elkhorn Blvd., Suite 635
Sacramento, CA 95842

For Rent Magazine
75 Remittance Drive, #1705
Chicago, IL 60675

General Cleaning
5531 Jerry Litell Way
Sacramento, CA 95835

Harris, Rosales & Harris
818 Main St., #E
Pleasanton, CA 94566

Light Bulbs Plus
2689 Citrus Road, #C
Rancho Cordova, CA 95742

Norcai Direct Marketing
2222 Francisco Drive # 510-348
El Dorado Hills, CA 95762

On-Site Com, Inc.
2465 Latham Street, Suite 301
Mountain View, CA 94040

Otis Spunkmeyer
7090 Collection Center Drive
Chicago, IL 60693

SIA Security Services
924 Enterprise Dr.
Sacramento, CA 95825

Staples Business Advantage
P.O. Box 689020
Des Moines, IA 50368

Stantec
13800 Collections Center Drive
Chicago, IL 60693

CJS Plumbing, Inc.
PO Box 18362
Reno, NV 89511

Ridge Electric
3190 Central Ave
Roseville, CA 95747

CNC Contractors, Inc.
2751 Land Avenue
#B
Sacramento, CA 95815

RW Stucco Inc
2570 Marko Street
Las Vegas, NV 89115

Front Range Drywall
12061 Pennsylvania St
Unit A-106
Denver, CO 89241

Howard Rice Nemerovski
3 Embarcadero Center
7th Floor
San Francisco, CA 94111

Award Painting
1122 Western Street, #23
Fairfield, CA 94533

Miller Starr Regalia
Dept 05115
PO Box 39000
San Francisco, CA 94139

Sacramento Building
500 Sequoia Pacific Blvd
Sacramento, CA 95814

Valley Stairway
PO Box 245
Clovis, CA 93613

American Underlayment
PO Box 1169
Wheatland, CA 95692

Day Tile & Stone
6705 Eskridge Way
Elk Grove, CA 95758

Eagle Pools
3329 Garfield Ave
Carmichael, CA 95608

A&D Automatic
2490 Middlefield Rd
Redwood City, CA 94063

County of Sacramento
Utilities
PO Box 1804
Sacramento, CA 95812

Armstrong Cabinets
16803 Dallas Parkway
Addison, TX 75001

Balloons Galore
11321 Trade Center Drive
Ste 245
Rancho Cordova, CA 95742

14